UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMERICAN COMMERCE
INSURANCE COMPANY,

                 Plaintiff,

     v.

CHADBOURNE LADENBURG, et al.,

            Defendants.

CASE NO. C18-5047 RBL

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff ACIC's Motion for Summary Judgment.
[Dkt. # 7]. This declaratory judgment action arises out of the sale of Defendant Ladenburg's[1] Gig
Harbor home. The home was insured under an ACIC homeowners' policy.

Ladenburg listed the home for sale with a real estate agent, Wetter. Ladenburg apparently
negotiated with one potential buyer, Hoffnagle, before selling the home to a different buyer,
Brandt. In December 2017, Hoffnagle sued Ladenburg in Pierce County Superior Court,
asserting only a breach of contract claim[2].

---

[1] Ladenburg and Patel are both defendants, and both owned the home. They are referred to in the singular for clarity.
No disrespect is intended.

[2] This was actually an "amended complaint;" the nature of the initial complaint is not described.

1    Ladenburg made a claim under his homeowners' policy, asking ACIC to defend him

2    from Hoffnagle's claim, and potentially, to indemnify him for any damages. ACIC commenced

3    this Declaratory Judgment action in January, seeking a declaration that its policy provides

4    Ladenburg no coverage for Hoffnagle's breach of contract claim.

5    Around the same time, Hoffnagle amended his Pierce County complaint. He added

6    Wetter and Brandt as defendants, and asserted breach of contract (duties of good faith and fair

7    dealing), specific performance, civil conspiracy, and fraud claims against Ladenburg. He sued

8    Wetter (as Ladenburg's agent) for tortious interference, civil conspiracy, and fraud. The fraud

9    and civil conspiracy claims assert that Ladenburg and Wetter concealed damage to the home[3].

10   ACIC moves for summary judgment, arguing that its policy does not provide coverage

11   for Hoffnagle's breach of contract claim. Ladenburg argues that the Motion does not address the

12   second amended complaint and its various claims. ACIC argues in reply that each of the new

13   claims sounds in intentional tort and none are covered under the policy as a matter of law.

14   **A.  Discussion.**

15   Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

16   file, and any affidavits show that there is no genuine issue as to any material fact and that the

17   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

18   an issue of fact exists, the Court must view all evidence in the light most favorable to the

19   nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

20   *Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

21   A genuine issue of material fact exists where there is sufficient evidence for a reasonable

22

23   _____

[3] It is unclear why Hoffnagle sues simultaneously to force Ladenburg to sell him the home, and to obtain damages
24   from him for fraudulently concealing material defects in it. That is a matter for the Superior Court.

factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

The interpretation of an insurance policy is a question of law. *Overton v. Consolidated Ins.,* 145 Wn.2d 417, 423 (2002). Insurance policies are contracts which are construed as a whole with the terms interpreted in the way that an average insurance buyer would understand. *Id*. If the language is clear and unambiguous, the court must enforce it as written and may not create ambiguity where none exists. *Am. Nat'l Fire Ins. v. B&L Trucking & Constr. Co*., 134 Wn.2d 413, 419 (1998).

Determining whether insurance coverage exists is a two-step process. *McDonald v. State Farm Fire & Cas.,* 119 Wn.2d 724, 727 (1992). The insured must first demonstrate that "the loss falls within the scope of the policy's insured losses." *Id.* To avoid coverage, the insurer must then show that the loss is excluded by specific policy language. *Id.* at 728. In Washington, the

1    duty to defend is broader than the duty to indemnify. *Hayden v. Mutual of Enumclaw Ins.,* 141

2    Wn.2d 55 (2000). A duty to defend exists where the complaint against the insured, construed

3    liberally, alleges facts which could impose liability upon the insured within the policy's

4    coverage. *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d 751 (2002). The duty to defend is not,

5    however, limitless. *E-Z Loader v. Travelers Ins.,* 106 Wn.2d 901, 910 (1986) ("We decline to

6    impose on an insurer coverage of a liability not set forth in the policy."). A claim that is clearly

7    outside of the policy's coverage relieves the duty to defend. *Woo v. Fireman's Fund Ins. Co.*,

8    161 Wn.2d 43, 53 (2007). The duty to indemnify, unlike the duty to defend, turns on whether the

9    facts of the underlying matter are "actually covered." *American Best Foods v. Alea London*, 168

10    Wn.2d 398 (2010).

11       An insurer may not put its own interests ahead of its insured's. *Mut. of Enumclaw Ins.*

12    *Co. v. T&G Const., Inc.*, 165 Wash.2d 255, 269 (2008). To that end, it must defend until it is

13    clear that the claim is not covered. *Truck Ins. Exch.*, 147 Wash.2d at 765.

14       ACIC argues, and demonstrates, that its homeowners' policy specifically excludes

15    coverage for damages or liability resulting from intentional acts. The policy's "Property

16    Coverages" exclude losses caused even in part by intentional acts:

17
18
19
20

      1.   "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

21

22                       \*\*\*

23

24

i. **Intentional Acts** — "We" do not pay any "insured" for loss which results from any act committed by or at the direction of any "insured" with the intent to cause a loss.

Dkt. # 8-1 at 14, 15. The policy's "Liability Coverages, including "Coverage L – Personal Liability," similarly exclude coverage for intentional acts:

**EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES**

"We" do not pay for "bodily injury" or "property damage" resulting from one or more of the following excluded "occurrences", regardless of other causes or "occurrences" that contribute to or aggravate the "bodily injury" or "property damage", whether such causes or "occur-rences" act to produce the "bodily injury" or "property damage" before, at the same time as, or after the excluded "occurrence".

1. **Exclusions That Apply To Coverages L and M** — This policy does not apply to:

\*\*\*

i. "bodily injury" or "property damage":

1) which is expected by, directed by, or intended by an "insured";
2) that is the result of a criminal act of an "insured"; or
3) that is the result of an intentional and malicious act by or at the direction of an "insured".

Dkt. # 8-1 at 18, 19.

Ladenburg's first argument, that the Motion addresses the wrong (non-operative) complaint is correct, but not persuasive. The Motion's primary basis—the policy does not cover losses arising from intentional acts—applies with equal or greater force to the newly-asserted fraud and civil conspiracy claims.

Ladenburg next argues that there is a material question of fact as to whether the claims against him are "conceivably covered" under his ACIC homeowners' policy. He argues there are factual questions about whether Hoffnagle claims "bodily injury or "property damage." He points out that his policy had an endorsement modifying the definition of "personal injury" to include coverage for a series of tort claims:

> Personal injury means false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious prosecution, libel, slander, defamation of character, or invasion of privacy.

Dkt. # 8-1 at 29. He argues that, read broadly, Hoffnagle's claim could be construed as seeking damages under this coverage, and that ACIC "should have investigated" the specific nature of his clams before seeking summary judgment. As he implicitly concedes, however, even if Hoffnagle seeks damages for personal injury or property damage (and even that conclusion is a stretch), such a claim is not covered if the cause of the damage was an intentional act.

Ladenburg argues that ACIC "assumes" that he intentionally breached the contract, while his position is that there *never was* an agreement. He complains that ACIC should have first determined whether there was an enforceable agreement.

1    But that is not correct. The duty to defend "arises when a complaint against the insured,

2    construed liberally, alleges facts which could, if proven, impose liability upon the insured within

3    the policy's coverage." *See Truck Ins. Exch.*, 147 Wn.2d 751, 761 (2002). The duty to defend is

4    not triggered by the insured's *denial* of the facts alleged, and the insured cannot create a question

5    of fact about coverage by disputing the facts alleged against him. The issue is whether there

6    could "conceivably" be coverage if Hoffnagle established that there was a valid contract and that

7    Ladenburg breached it. Ladenburg has not cited a single case suggesting that a homeowners'

8    policy even conceivably covers a claim for specific performance of a real estate purchase and

9    sale agreement, and the Court is not aware of any.

10    The same is true of Ladenburg's claim for coverage on Hoffnagle's revised "breach of

11    contract" claims, for breach of the duty of good faith and fair dealing. And it is certainly true of

12    Hoffnagle's new, intentional tort claims—civil conspiracy and fraud. It is not conceivable that, if

13    Hoffnagle proves those claims, the resulting damages would be covered; they are instead

14    expressly excluded. Both tort claims require as an element "intent" on the part of the tortfeasor.

15    Finally, Ladenburg argues that there might be coverage under the policy's "incidental

16    coverage."

2. **Contracts and Agreements** — "We" pay for damages for "bodily injury" or "property damage" where the liability of others is assumed by an "insured" under a written contract:

    a.   that directly relates to the ownership, maintenance, or use of an "insured premises"; or

    b.   if the contract was made before the loss.

The loss causing the "bodily injury" or "property damage" must have occurred during the policy period.

Dkt. # 8-1 at 16. He argues that, in the underlying real estate purchase and sale agreement, the buyer (Hoffnagle) agreed he was relying only on Ladenburg's representations, not Wetter's. Ladenburg argues that he could therefore conceivably be liable for Wetter's intentional misconduct under this agreement, and that his "assumed liability" is covered.

ACIC argues that this is "pure speculation" and not even the most liberal reading of Hoffnagle's complaint leads to the conclusion it asserts that Ladenburg "assumed" liability for Wetter's intentional fraud.

//

//

//

//

//

1    There is no conceivable coverage under Ladenburg's ACIC policy for any of Hoffnagle's

2    claims against him. As ACIC argues, there is therefore no duty to defend or to indemnify. The

3    Motion for Summary Judgment on ACIC's Declaratory Judgment claim to this effect is therefore

4    GRANTED. The matter is closed and judgment shall be entered in ACIC's favor.

5         IT IS SO ORDERED.

6

7    Dated this 30th day of April, 2018.

8

9    _____
     Ronald B. Leighton

10   United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24